No. 36,959

FRANCIS C. BASHAM, JOHN H. BASHAM and JAMES J. BASHAM, *Appellants*, v. EUREKA LOCKER & COLD STORAGE, INC., *Appellee*.

(187 P. 2d 500)

Opinion filed December 6, 1947.

*Homer V. Gooing,* of Wichita, argued the cause, and *Howard T. Fleeson, Wayne Coulson, Paul R. Kitch, Manford Holly* and *Dale M. Stucky,* all of Wichita, were with him on the briefs for the appellants.

*W. D. Jochems,* of Wichita, argued the cause, and *Harold G. Forbes* and *Thomas C. Forbes,* both of Eureka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was a suit to enjoin defendant from conducting an alleged nuisance. Upon the filing of the petition a temporary injunction was issued. After the issues were formed the judges of the two divisions of the district court sat together and heard the evidence, made findings of fact and conclusions of law and rendered judgment for defendant. Plaintiffs have appealed.

The record discloses that plaintiffs are duly licensed physicians and surgeons; that in 1942 they purchased five lots in the northwest corner of block 46 in Eureka, a city of the second class, with a population of about 3,500. These lots are situated in the fourth block north of the main business intersection of the city, but across the street to the north was a garage and an apartment house; across the street to the west was a filling station on the corner, and several small business places to the south. The lots faced to the west upon the main street of the city, which was also U. S. 54, which highway turned east so as to run on the north side of the lots. Upon the lots was a large two-story building constructed and used for many years as a hotel, with a north and a south wing which extended to the alley

at the east end of the lot. Plaintiffs remodeled the south wing of the hotel building into a hospital with 25 beds, an operating room, and other rooms and equipment common to a hospital, so as to make of it a modern well-equipped hospital. The service entrance to the hospital was from the alley to the north side of the south wing. There were several windows on the south wall so that patients or others occupying the hospital might see to the south. The hospital was well patronized.

In 1946 defendant purchased the two southwest lots of the same block, then occupied by a two-story brick and concrete building, 50 feet wide, which had been used for many years as a commercial garage and machine shop and was equipped for welding. Defendant remodeled this building so as to use the front portion of it on the first floor for a locker room for the cold storage of meats, etc. This contained 1,800 lockers, of which about 1,000 were in use at the time of the trial. To the rear of the main building defendant built a one-story room which extended the building to the alley. This was to be made as a killing room for livestock. Between that room and the locker room was a room for the processing of the meat of the animals and cutting it suitable to be placed in the lockers, and for rendering lard. About the center of the east end of the building was a door which could be let down in such a way as to form a chute or ramp upon which the livestock could be unloaded from trucks into the killing room. Defendant planned to kill cattle and hogs and prepare the meat for storage. The capacity was sufficient to handle about seven animals per day. The offal from the butchering was to be loaded into steel barrels, covered, and taken out of the building on the south to the street. All of the equipment and methods of handling were of the best and latest scientific methods proper for conducting such a business. It had been thoroughly inspected and approved by a representative of the state board of health. There are no windows or other openings on the north side of this building. It is 125 feet from the south wall of plaintiffs' hospital to the north wall of defendant's building, and upon the lot directly north of defendant's building is a small bungalow used as a beauty parlor.

Plaintiffs predicate their action upon the theory that defendant was operating a slaughterhouse, which it was alleged was a nuisance per se, or at least a nuisance prima facie. The controverted issue

was whether the business as planned to be conducted by defendant would so affect the patients in the hospital as to interfere with their treatment or convalescence, to their detriment, and thus constitute a nuisance to plaintiffs' business which should be enjoined. Much evidence was introduced pertaining to that question. The court made findings of fact, much more in detail than the above statement, and concluded as a matter of law,

"That the business of the defendant, and the operation thereof, constitute a lawful business and is neither a nuisance per se nor a nuisance in fact."

Judgment was rendered in harmony with this conclusion of law.

Plaintiffs requested the court to make some specific additional findings of fact. Some of these were not very material; at least two of them were opposite to findings made by the court. The request was denied. In plaintiffs' motion for a new trial the refusal to make the specific findings requested was stated as a ground for the new trial. In plaintiffs' brief in this court it is said:

"The position of the appellants can be concisely stated. Appellants take no exception to the court's findings but insist that the court drew an erroneous conclusion of law from the facts found, the admission of the parties and the undisputed evidence."

The "undisputed evidence" referred to in this statement is the testimony of witnesses tending to show that the business conducted by defendant would be detrimental to the patients in the hospital. It is not for this court to weigh that evidence. It was the function and the duty of the trial court to weigh that evidence together with all of the other evidence introduced. Furthermore, it is not accurate to say that this testimony relied upon as undisputed evidence is in fact undisputed. At least there is other evidence from which the trial court might reasonably conclude the testimony relied upon as undisputed was at best exaggerated. Indeed, it is possible the trial court did not believe the testimony which this court is asked to regard as undisputed and controlling. The trial court was not bound to believe the testimony because it was not categorically denied. No point is made in this court that the trial court erred in refusing a new trial because of its refusal to make the requested findings. We must decide this case upon the record made in the court below and without attempting to usurp the functions of the trial court in weighing the evidence.

There is nothing particularly difficult about the legal questions

presented by the record. Years ago it was generally held that a slaughterhouse was a nuisance per se, and as they were conducted in those days the holding was justified. In these days, when places where livestock are killed and processed to procure meat for human consumption are more strictly regulated, such places are regarded as only a prima facie nuisance. See Joyce, Law of Nuisances, §§ 126, 127; 39 Am. Jur. p. 365, § 99; 48 Am. Jur. p. 463, § 5; 46 C. J. 723, and cases cited in the above authorities. We have examined all of the cases cited by counsel but find no necessity of discussing them in detail. When the question is controverted, as it is here, as to whether the place is a nuisance, and where it was shown in detail, as it was here, that there would be no noise or odor that could have a deleterious effect upon anyone, and no danger of infection to patients in the hospital, the trial court was justified in finding, as it did, that defendant's place of business was not a nuisance. As presented to the trial court this was largely a fact case. We find no lack of an abundance of evidence to sustain the findings made and the conclusions reached by the trial court. (*Potts v. McDonald,* 146 Kan. 366, 69 P. 2d 685.)

At the time of the trial defendant had not been killing animals on its premises or processing the meat because of the temporary injunction issued when the action was filed. As a result the testimony was necessarily anticipatory, not only as to the effect upon patients in the hospital but also upon the manner in which defendant would conduct its business. The judgment of the trial court, therefore, was confined to the evidence before it.

We find no error in the record. The judgment of the court below is affirmed.